No. 31,655

Rufus Henry Sanders, *Appellee*, v. Frankie Moore and T. A. Moxcey, Executor of the Will of Benjamin F. Sanders, *Appellants*.

(41 P. 2d 771)

Opinion filed March 9, 1935.

*T. A. Moxcey* and *Steadman Ball*, both of Atchison, for the appellants.

*Maurice P. O'Keefe* and *Gerald W. Foley*, both of Atchison, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: Benjamin F. Sanders owned land in Atchison county and had entered into a contract, dated February 11, 1919, for the sale of eighty acres to his son, Rufus Henry Sanders, for the agreed consideration of $8,000. One thousand dollars was required to be paid on March 25, 1920, and the balance with interest at the rate of five per cent payable on or before March 2, 1925. The improvements were to be kept up and were to be insured. The failure to make prescribed payments, it was provided, should forfeit all payments previously made. A warranty deed was to be executed when the payments were completed, conveying a good and sufficient title to the son. There is an allegation that the son paid the $1,000, and that seems to be conceded, but he has failed to pay anything subsequently and is now being charged for the land purchased, of which he is and has been in possession for a long time.

The owner of the land, B. F. Sanders, died testate on January 7, 1929. The will provided that Etta Brown, a daughter, had already received her share of the estate and would receive nothing more of the remaining estate. He mentioned this, he said, so that she would know she was not forgotten, and that "I bear her no ill will, but love her as a daughter." He stated that he had already advanced sums, credits and amounts exceeding $5,000.

He also stated in his will that Ira Sanders, a son, after allowing all proper credits, had received the sum of $5,000, not including interest, and it was his will that he receive nothing further from his estate. "These matters are mentioned merely that he may know I have not forgotten him in the making of this will and that I bear him no ill will, but love him as a son."

He then treats of a grandson, Fred Moore, son of his deceased daughter, Bertha Moore, saying that this grandson "has received moneys from me and I am at this time holding his note for the sum of $812 . . . and if I continue to hold the note at my death .' . . I direct that it be surrendered to him, and that he be not held thereon after my death." Besides, he gives him in the will the sum of $800 in addition thereto.

To Mary Sanders, widow of his son, W. A. Sanders, he directs that the executor shall surrender "all notes held by me at the time of my death executed by my said son, W. A. Sanders."

The testator then states that he has been making his home with Arthur E. Kern and wife, and paying them for board and lodging, and, "while I am not indebted to them in any sum, still in recognition of the favors and courtesies they have shown me . . . I desire and do hereby will to them whatever furniture I have in their home at the time of my death, and also my interest in an automobile now in their possession which was purchased part by me and part by them."

Then he concludes with the residuary provision, giving all the rest and remainder of his estate to his daughter, Frankie Moore, and to his son, Rufus Henry Sanders, share and share alike.

He then recites that he is the owner of the legal title to the land sold to Rufus Henry Sanders on February 11, 1919, and it is his will that the executor shall carry out the contract existing between himself and Rufus Henry Sanders by deeding the land, "Rufus Henry Sanders to be charged with the amount which shall be owing on

said contract at the time of my death." The testator provided that if the estate shall have diminished to such point that the residue will not be sufficient to pay Frankie Moore an amount equal to the amount that may be owing by Rufus Henry Sanders on the contract, then in order to receive such conveyance Rufus Henry Sanders shall be required to pay to the executor an amount sufficient to enable him to pay Frankie Moore an amount equal to one-half of the residue of his estate.

T. A. Moxcey, of Atchison, is named as executor of the last will, and he has been in charge of the estate since the time of testator's death.

The will recognizes that the plaintiff has made the initial payment of $1,000, and is chargeable with the obligations resting on the purchaser. Rufus Henry Sanders had been in possession of the land, receiving the benefits under the will after 1920. Moxcey says that the rents should have been $300. After making the contract for the land and the acknowledgment of the indebtedness, and after years of possession of the farm by the son, the father had a right to rely on the contract and terms of the will. He believed and intended that the price of the farm was part of his estate. The price of the land was a material part of the estate. There were bonds and securities of value about equal to the land. Apparently Rufus Henry Sanders expected that the will would be executed, carried into effect, and some benefits were received in which the son participated.

Some theory of equity and equality is claimed by the appellee which would operate to rewrite the will and fix terms and plan of division wholly contrary to the will as written by the testator. The will, interpreted as it was for many years, and free as it is from ambiguous and involved provisions, should be construed and carried out as written. Even when the matter came up for further consideration when the will was made at the time of his death, the testator repeated his direction that the contract with his son is binding, that the executor should carry it out by deeding the land to him, and the son would be charged with the amount owing to the testator for it. The testator took note of the changed times and the possibility that the estate might be diminished somewhat in value prior to his death, and that the residue might not be sufficient to pay Frankie Moore's portion, and provided the son should be required to pay to the executor an amount sufficient to enable him to pay Frankie

Moore an amount equal to one-half of the residue; the residue to be viewed as including the amount due on the land contract.

If the facts are found as to diminution in value between the time of the will and the time of his death, the subsequent provision may be employed and a different amount paid as including the unpaid purchase money. Some time later appellee stated that he declined to pay the purchase price, that there is no obligation on him to pay for it or receive the conveyance from the executor; that the amount is not an obligation under the will, and that the executor has no authority to sell the property, and that it subsequently became a residue of the estate, and he claimed a share of it, to be divided under the proviso of the will, and which he claims entitled him to receive one-half of the residue. Before that provision could be enforced the court must have found that there has been a diminution in the value of the land between the time the will was made and the time of testator's death. Some testimony was introduced to show that lands were worth varying amounts, but the executor states that it was worth at least $100 an acre at the time of the testator's death. Under the last provision he was required to pay an amount sufficient to enable the executor to pay Frankie Moore one-half of the residue when viewed as including the unpaid purchase money on the contract. When the facts are found relating to the diminution in the value it will be the duty of the court to make the division under this last provision of the will.

The judgment is reversed and the cause remanded with directions to find the diminution between the time of making the will and the time of the testator's death, and determine the amount due from the plaintiff, and divide the residue equally with Frankie Moore.